GLENN W. KINCHELOE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
KINCHELOE v. COMMISSIONER
Docket Nos. 3392-77, 8985-77, 13984-78.
United States Tax Court
T.C. Memo 1980-527; 1980 Tax Ct. Memo LEXIS 65; 41 T.C.M. (CCH) 437; T.C.M. (RIA) 80527; November 25, 1980, Filed Glenn W. Kincheloe, pro se. William Bogner, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Marvin F. Peterson, pursuant to the provisions of section 7456(c) of the Internal Revenue Code[1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. *68 OPINION OF THE SPECIAL TRIAL JUDGE PETERSON, Special Trial Judge: In these consolidated cases, respondent determined the following deficiencies and additions to tax under sections 6651(a) and 6653(a): Taxable
Additions to tax
Year
Deficiency
(sec. 6651(a))
(sec. 6653(a))
1973
$16,232.58
$ 0
$811.63
1974
2,037.48
191.17
0
1975
7,351.06
1,042.06
0
Concessions having been made, the remaining issues basically involve a factual determination of the amount, if any, of petitioner's unreported taxable income, and whether petitioner is entitled to claim certain deductions. In addition, we must determine whether petitioner is liable for additions to tax under section 6653(a) for 1973, and section 6651(a) for 1974 and 1975. FINDING OF FACT Some of the facts have been stipulated by the parties and are found accordingly. Petitioner Glenn W. Kincheloe (petitioner) resided in Davenport, Iowa, when he filed the petitions herein. For the taxable year 1973 petitioner filed his Federal income tax return with the Internal Revenue Service Center, Kansas City, Missouri. For the taxable year 1974, petitioner filed his Federal income tax return *69 on June 16, 1975, with the Internal Revenue Service Center, Kansas City, Missouri. Petitioner's 1975 Federal income tax return was filed with the Internal Revenue Service in Des Moines, Iowa, on March 15, 1977. It was then forwarded to the Internal Revenue Service Center, Kansas City, Missouri, which received it on March 18, 1977. For all of the taxable years at issue petitioner and his wife filed separate returns. Petitioner was employed as a chemical engineer from May, 1966 until July, 1973 by the United States Army Ammunition Procurement Supply Agency near Joliet, Illinois. During this period he lived with his wife Thelma and daughters Jeanine and Glenna at 4120 Prairie Avenue in Brookfield, Illinois. The Army facility near Joliet closed during the summer of 1973, and petitioner was transferred by the Army to a job in the Chemical Division of the Army Armament Command at the Rock Island Arsenal in Rock Island, Illinois in July, 1973. Petitioner still works at the Arsenal. Petitioner moved from Brookfield to Davenport, Iowa when his job site changed. Neither daughter resided with petitioner in Davenport during 1973, 1974, or 1975. Taxable Year 1973
Petitioner *70 received $39,166.88 during 1973 from the sale of securities he owned in joint tenancy with his wife, Thelma Kincheloe, detailed as follows: [3]
Security
No. Shares
Date Sold
Net Sales Price
Western Deep Level
100
5/21/73
$ 1,725.15
Kloof Gold Mining
100
5/21/73
1,515.41
Nalco Chemical (Nalco)
100
1/10/73
6,434.87
Nalco
100
2/15/73
6,431.62
Nalco
200
6/08/73
5,707.18
Great Western United (GWU)
200
8/01/73
3,282.03
Nalco
100
10/2/73
3,488.07
Nalco
100
10/31/73
3,834.61
GWU
100
8/13/73
1,318.54
GWU
50
8/13/73
650.01
GWU
100
9/26/73
1,367.89
GWU
50
9/26/73
674.51
GWU
200
9/27/73
2,736.99
$39,166.88
The above total was arrived at by studying trade transaction slips and monthly broker statements from two different brokers, duPont, Glore Forgan & Co. (duPont), and Rodman and Renshaw (Rodman). The trade transaction slips and monthly broker statements *71 also allowed us to determine the date petitioner purchased various securities and the amount paid. Based on these records we find that petitioner purchased securities as follows: Date
Net
No. Shares
Purchased
Purchase Price
Western Deep Level
100
2/14/72
$1,114.67
Kloof Gold Mining
100
2/22/72
784.80
Nalco
30
1/11/61
1,527.58
"
37
1/23/61
2,097.72
"
23
2/03/61
1,445.26
" 27
3/15/61
1,627.57
"
50
4/27/61
3,258.13
"
100
4/28/61
6,445.40
"
70
4/28/61
4,519.40
"
15
5/01/61
974.60 "
40
5/01
61
2,589.80
"
50
5/26/61
2,944.06
"
25
2/14/62
1,482.13
"
50
3/13/62
2,780.75
"
20
7/09/64
1,3 98.95
"
50
7/29/64
3,534.65
"
30
8/13/64
1,050.50
"
40
9/23/64
1,479.75
"
30
10/5/64
1,080.80
"
20
6/21/65
800.38
"
30
10/31/66
1,463.34
"
100 *
2/12/70
5,225.86
"
100
7/23/71
4,807.75
"
40
5/09/72
2,390.55
"
30 5/26/72
1,806.81
"
40
6/07/72
2,441.20
"
100
5/25/73
2,821.98
GWU
100
3/09/70
2,229.00
"
100
7/24/70
1,888.25
"
100
12/22/71
1,888.25
"
100
3/27/72
1,203.13
"
200
10/2/72
2,606.95
"
300 **
9/13/72
4,542.66
"
50 **
9/13/72
756.65
"
100 **
10/5/72
1,303.58
"
50 **
10/5/72
661.03
*72 On his 1973 Federal income tax return petitioner claimed that he incurred a $2,100 long-term capital loss from the sale of 200 shares of GWU stock. Petitioner claimed $1,000 of this "loss" as a deduction from his adjusted gross income.Petitioner reported no other gain or loss from the sale of securities on his 1973 return. "Bad Debt" Deduction
Petitioner and his wife both signed a note and a security agreement on April 27, 1972, in which they became co-makers with Barry Knight, a young man who was not a relative, in the financing of his purchase of an automobile. Knight defaulted, and Associate Finance, the lender, sued petitioner and his wife seeking a judgment of $1,972.26. Petitioner was served with the summons and complaint on July 30, 1973. On October 30, 1973, petitioner and his wife moved for leave to file a third party complaint against Knight. The motion was granted and the complaint and summons were issued. Nothing more happened until June 12, 1974, when Associates obtained *73 a judgment against petitioner and Thelma for $1,972.26. They finally settled the matter with Associates for $1,000 on October 21, 1974. Petitioner paid $500 and Thelma paid $500.Petitioner and Thelma then obtained judgment on their third party complaint against Knight on October 31, 1974. Based on this action petitioner claimed a $650 "bad debt" loss on his 1973 return. [4]
Travel Expense
Petitioner deducted $1,872 as travel expense while away from home. This was composed of "automobile expense" ($1,672) and "meals and misc. expenses." He computed the automobile expense by using both the regular method of actual expenses and depreciation and the optional method of $.12 per mile plus parking fees and tolls. Petitioner claimed he drove 4,000 business miles. This amount was composed of travel to Naval Reserve meetings and to "property at Lake Thunderbird." Respondent allowed 3,080 miles for travel to the Naval Reserve meetings. The cottage at Lake Thunderbird *74 was not listed as rental property on petitioner's 1973 return. In addition, petitioner offered no evidence on the frequency and distance of the trips to Lake Thunderbird. Personal Property Tax
Petitioner claimed a $45 deduction for personal property tax, which respondent disallowed, and offered no evidence to substantiate this deduction. Contributions
Petitioner claimed a 1973 charitable contribution deduction of $745, and respondent has allowed $130 based on petitioner's statements and cancelled checks. We find petitioner did not make contributions in excess of the amount allowed by respondent. Casualty Loss
Petitioner claimed a casualty loss of $265 on his 1973 return without reducing this amount by $100 as required by section 165(c) (3). Petitioner offered no testimony or other evidence concerning the nature of the accident or event. Uniform Expense
Although petitioner did not claim a deduction for Naval uniforms on his return respondent has allowed a deduction in the amount of $193.45 based on receipts and cancelled checks. Our examination of the record does not reveal any additional expenditures for uniforms by petitioner. Miscellaneous *75 Expense
Petitioner deducted $2,750 for miscellaneous expenses which he labelled: Stock info $300, Technical books, education and magazines $150, organization dues 40, living away from home exp. $150/mo., office in home $400, Education 250, Education Jeanine 200. Respondent has disallowed all but $25 of these expenses for failure to substantiate, but we find petitioner did incur expenses in excess of the amount allowed by respondent. Petitioner was very interested in the stock market, and accordingly purchased several periodicals dealing with the stock market and the economy. No cancelled checks or receipts are in the record, however, and petitioner did not explain how he computed the amount deducted. Petitioner purchased several technical books to enable him to pass the professional engineering examination, but no documentation was provided to support this deduction. Respondent allowed $25 as the amount of dues paid to the American Institute of Chemistry. Petitioner testified that an equal amount was paid as dues to the American Chemical Society. Again, however, no cancelled checks or receipts were produced. Petitioner deducted as "living away from home" expense *76 the cost of commuting from Davenport to Joliet. In addition, petitioner claimed an office in home deduction, although he admitted the office was used exclusively for non-business purposes. Also, petitioner was not required by his employer to maintain such an office; he did so voluntarily.
Petitioner agreed that the "Education 250" was duplicative of the "technical books, education and magazines $150." Lastly, petitioner's deduction of "Education Jeanine 200" was a deduction for the cost of his daughter's college education. Taxable Year 1974
Bad Debt Loss
On his 1974 return, petitioner claimed a "Bad Debt Loss" as a short-term capital loss with the statement that the loss occurred "10/74," and respondent disallowed this deduction in its entirety. Petitioner offered no evidence at trial to substantiate this claim. Casualty Losses
Petitioner claimed a deduction for four casualty losses on his 1974 return. Petitioner did not identify the nature of the casualties on his return, specifying only a dollar amount coupled with the notation "4 losses." Apparently one of the losses claimed by petitioner was for the theft of a roto tiller and lawn mower. We are convinced *77 petitioner suffered such a theft loss, but are unable to determine petitioner's basis in the goods stolen or their fair market value immediately prior to the theft. A second loss claimed by petitioner involves an automobile accident. Again, we are convinced petitioner's wife was in an accident while driving a car owned by petitioner, but we are unable to determine the fair market value of the car immediately before and after the accident. in addition, it appears petitioner had a possibility of recovery for the accident from his insurer during 1974. The third loss involved the theft of a refrigerator. Again, petitioner's testimony was the sole evidence supporting this deduction, and it was too vague for us to determine even the most rudimentary facts. Petitioner did not testify or produce any other evidence concerning the fourth claimed loss. Miscellaneous Deductions
Petitioner claimed deductions for investment publications ($268), Federal employee pension fund payments [5] ($1,545), safe deposit box ($7) and IRS audit expense ($546) on his 1974 return, all of which respondent disallowed. *78 As to the investment publications, petitioner provided cancelled checks and receipts substantiating his expenditure of $81.59 for investment publications and tax related matters. This is the only evidence offered by petitioner with respect to this deduction. Although petitioner may have incurred travel expenses driving from Davenport to Des Moines in connection with an Internal Revenue Service audit, he failed to substantiate the amount of the expense.Also, although petitioner utilized annual leave in order to meet with Internal Revenue Service agents, this did not involve an actual expenditure. Based on the record, we find petitioner spent $7 for a safe deposit box during 1974. Rental Expense
During 1974 and 1975 petitioner claimed certain deductions for losses incurred in the rental of three properties he owned. Petitioner owned a cottage at Lake Thunderbird, 120 miles from his residence, which was occupied by Barry Studdard during 1974. Presumably Mr. Studdard was a rent paying tenant, but petitioner did not report any rental income from this property on his 1974 return. Instead, he merely claimed expenses and depreciation resulting in a net loss for this property. *79 Petitioner also owned two pieces of property in Davenport which were occupied by tenants during 1974 and 1975. Petitioner reported rental income from these two units. He also claimed certain expenses and depreciation which resulted in a net rental loss. Respondent disallowed all but $300 of the total rental expense claimed for failure to substantiate. In addition, respondent contends that since no rental income was reported from the Lake Thunderbird cottage, it was not rental property, and petitioner is therefore precluded from deducting business expenses. In any event petitioner has failed to substantiate an expense in excess of the amount allowed by respondent. [6]
Unreported Wage Income
Based on four W-2's received by petitioner, we find petitioner received income of $1,125.72 during 1974 which was not reported on his Federal income tax return. Additions to Tax Under Section 6651(a)
Petitioner's 1974 return was due April 15, 1975, but was not received by the Kansas City Service Center until June 17, 1975. *80 A notation made by the Service Center indicates the return was postmarked June 16, 1975. Accordingly, petitioner's return was filed on June 16, 1975. Since there is no evidence that petitioner either requested or received an extension for time to file he filed a delinquent tax return. Taxable Year 1975
Moving expense
Petitioner incurred certain moving expenses during 1973 in connection with his move from Brookfield, Illinois to Davenport, Iowa; however he did not claim these expenses as a deduction until 1975. Petitioner explained that he did not deduct the expenses in 1973 because he expected the rest of his family to move to Davenport shortly after he did, and therefore decided he would deduct all of the expenses for both moves at the same time, rather than deduct his expenses in 1973 and his family's in a later year. By 1975, however, it was apparent to petitioner that his family was not going to join him in Davenport so he deducted his 1973 moving costs on his 1975 return. Petitioner was unable to provided either documentation or concise testimony substantiating the expenses incurred in 1973. In addition, he admitted at trial that he "overclaimed" this deduction *81 "a lot." Employee Business Expense
Petitioner claimed as an employee business expense certain amounts expended for meals and lodging, automobile expense, and uniform and miscellaneous expense. Petitioner testified at trial that this "is Lake Thunderbird expense and Navy drill expenses, and I could substantiate all of that." Although the record was left open for 120 days after the trial of this case, the only substantiation proffered was a cancelled check made payable to the Navy Exchange in the amount of $72, with the notation "uniforms" in the lower left hand corner. Rental Loss
On his 1975 return petitioner again listed the cottage at Lake Thunderbird as rental property and failed to report any rental income, but claimed expenses for auto and travel, insurance, legal and accounting fees, and repairs. Independent of these expenses, which petitioner totally failed to substantiate, was a casualty loss which petitioner did not deduct. During 1974 the tenant at the Lake Thunderbird cottage did substantial damage to the carpeting and fixtures, which petitioner testified decreased the fair market value of the cottage by $2,000. Petitioner did not claim this loss on *82 his 1974 return because he believed a possibility of recovery against the tenant existed. Petitioner contacted an attorney to explore the possibility of recovering from the tenant for the casualty, and the attorney engaged the services of an appraisor to determine the damage done by the tenant. The appraisor, a local realtor, estimated the damage to light fixtures, carpet, glass breakage, material and labor to be $150. In addition, the appraisor determined that it would cost $75 to clean the entire cottage. It appears from the record that petitioner did not pursue the suit any further. With respect to the other two properties respondent disallowed all of the expenses and depreciation for failure to substantiate. Although the hardware store receipts again fail to link the purchases with rental property, cancelled checks unequivocally establish expenditures of $132.67 for the maintenance of the rental property. Taxes Expense
Respondent disallowed petitioner's $2,193.67 deduction for tax expense. The parties have stipulated that petitioner paid $1,055.03 of deductible taxes in 1975. Petitioner produced no other records or testimony to substantiate his claimed deduction. *83 Interest Expense
Respondent disallowed petitioner's $4,505.77 deduction for interest expense, however the parties have stipulated that petitioner paid $2,970.50 of deductible interest in 1975. No other evidence with respect to this deduction was produced by petitioner. Contributions
Respondent disallowed petitioner's $903 contribution deduction. Based on cancelled checks petitioner produced, we find petitioner substantiated $45 of charitable contributions. Casualty or theft loss
Respondent disallowed petitioner's $650 casualty of theft loss. Petitioner offered no testimony or other evidence concerning the nature of the loss.
Miscellaneous Deductions
Petitioner claimed the following deductions on his 1975 return: Investment Publications
$ 268
Retirement Income
1,353
Deposit Box
[7]
IRS Audit Expense
485
Office in Home
400
Education
150
Tax Lawyer
150
Other than testifying that the amount represents purchases of investment and technical magazines, petitioner did not substantiate the $268 investment publication deduction. The $7 deduction for rental of *84 a safe deposit box was substantiated by a cancelled check. The audit expense was petitioner's estimation of lost annual leave, not actual out of pocket expenditures. The office in home expense was, as petitioner admitted, wholly unrelated to the performance of his job. Petitioner introduced into evidence cancelled checks paid to a local community college and bookstore, and the Florida Institute of Technology, but did not explain for what reason the payments were made. Petitioner also introduced a bill from a local law firm in the amount of $125 dated June 16, 1975, for the preparation of his 1974 Federal income tax return. In addition, petitioner submitted a cancelled check payable to the "U.S. Tax Court" in the amount of $10. Addition to tax under section 6651(a)
Petitioner's 1975 return was received March 15, 1977, eleven months late. Petitioner dated his signature on the return as "3 June 76." No explanation concerning the late filing was offered by petitioner. OPINION Taxable Year 1973
Petitioner received a total of $39,166.88 from 13 sales of jointly owned securities; however, on his Federal income tax return he reported only one sale. In his brief, *85 respondent maintains petitioner is taxable on the amount realized minus adjusted basis, and he also made a determination of petitioner's basis. With respect to some of the sales respondent noted that no basis could be determined due to inadequate records and he therefore maintains that petitioner should be given a zero basis in those shares. We agree with respondent's contention that petitioner is taxable on the difference between the amount realized and the adjusted basis; however, we find that petitioner's basis in all of the shares sold can be readily determined. Pursuant to section 1001 petitioner must recognize the entire amount of the gain or loss realized, subject to certain exceptions. Except for three sales of GWU stock (where petitioner's broker noted which shares were sold) it is not possible to determine which shares petitioner sold during 1973, and therefore the "first-in first-out" rule of section 1.1012-1(c)(1), Income Tax Regs., will be applied to determine petitioner's basis in the shares sold. Accordingly, we find petitioner realized long-term capital gain or loss from the sale of securities as follows: Amount
Adjusted
Gain (Loss)
Security
Realized
Basis
Realized
Western Deep Level
$ 1,725.15
$ 1,114.67 610.48
Kloof Gold Mining
1,515.41
784.80
730.61
Nalco
25,896.35
35,085.15 [8]
(9,188.80)
GWU
10,029.97
11,381.17
(1,351.20)
*86 Based on the foregoing, we find petitioner realized a net long-term capital loss from the sale of securities in the amount of $9,198.91. This amount may be used to offset ordinary income, with two limitations, one of which is set forth in section 1211 (limiting deductions for long term capital losses). The second limitation arises out of the nature of petitioner's ownership of the stock.Petitioner owned the shares in joint tenancy with his wife and they filed separate income tax returns. As joint tenants petitioner and his wife were each entitled to one half of the sales proceeds. Even though petitioner received all of the proceeds he only had a one-half interest in the proceeds from the sale of the stock, and therefore *87 he is entitled to report only one-half of the loss realized. Haynes v. Commissioner,7 B.T.A. 465 (1927). On his 1973 return petitioner claimed a "bad debt loss" deduction in the amount of $650. This deduction was based on an acquaintance's default on a loan for which petitioner was a co-maker. Respondent disallowed the deduction in its entirety. Section 166(d) allows a short term capital loss deduction for nonbusiness debts in the year such debt becomes wholly worthless. Whether a debt becomes wholly worthless in the taxable year is a question of fact, and one of the factors to consider is the financial condition of the debtor. Section 1.166-2(a), Income Tax Regs. The burden of proof is on petitioner. Welch v. Helvering,290 U.S. 111 (1933). Not only has petitioner failed to establish that the debt became wholly worthless in 1973, he has not even proven that it ever became wholly worthless. As of the end of 1974 petitioner had been served with the finance company's complaint, and was himself suing the purchaser as a third *88 party defendant. None of the parties had made payments in settlement. Moreover, petitioner obtained judgment on the third party complaint in 1973, but failed to explain why he did not seek recovery on the judgment. While one of the reasons may have been the inability of the purchaser to pay, we are unwilling to speculate on petitioner's failure to pursue recovery. Therefore, petitioner's "bad debt loss" deduction is denied. [9]
Petitioner is entitled to deduct travel expenses incurred in connection with his employment under section 162 to the extent they are substantiated pursuant to section 274(d). Section 274(d) requires the taxpayer to substantiate "by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense * * *, (B) the time and place of the travel, * * * (C) the business purpose of the expense." Aside *89 from a few self-serving statements petitioner made at trial, the record is devoid of any corroborating evidence, let alone the quality of evidence required by section 274(d). Therefore, we find petitioner is not allowed a travel expense deduction in excess of the amount allowed by respondent. Respondent disallowed all of petitioner's personal property tax deduction, and all but $130 of petitioner's charitable contributions deduction, for failure to substantiate. Once more the burden of proof is on petitioner, Welch v. Helvering,supra, and once again petitioner failed to offer cogent evidence concerning the deduction. No evidence was offered concerning the personal property tax deduction, and it is denied.Since only vague and conclusory statements were offered to support petitioner's entitlement to the full charitable contribution deduction claimed, the amount in excess allowed by respondent is denied. Respondent disallowed petitioner's $265 casualty loss deduction in its entirety, and petitioner offered no evidence to refute respondent's determination. Since petitioner has the burden of proof this deduction is denied. Respondent allowed petitioner *90 a deduction for Naval uniforms which petitioner did not claim on his return. No additional amounts were spent by petitioner so we sustain respondent on this issue. Of the $2,750 claimed by petitioner for miscellaneous expenses, respondent disallowed all but $25 for failure to substantiate. Petitioner bears the burden of proof with respect to these expenses. Welch v. Helvering,supra.
Petitioner purchased several investment periodicals during 1973. These purchases were made with cash, and although petitioner could not produce any receipts, we are convinced he spent $40 for investment material. Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). Similarly, petitioner claimed a deduction for the purchase of books to enable him to pass the professional engineering examination. There were no receipts, but his testimony was generally credible and we therefore allow a $30 deduction. Cohan v. Commissioner,supra.
Based on a cancelled check produced by petitioner, respondent allowed a $25 deduction for dues paid to a professional organization. Aside from petitioner's statement that an equal amount was paid to a second *91 organization, there is no evidence that petitioner made such a payment, and we therefore sustain respondent on this issue. Section 262 provides that personal, living, or family expenses are not deductible. Commuting expenses are personal expenses, and are therefore not deductible. Section 1.262-1(b)(5), Income Tax Regs. Petitioner admitted his deduction for living away from home consisted entirely of commuting expenses, and therefore they are not deductible.
Petitioner claimed an office in home expense which respondent disallowed in its entirety. Section 262 disallows any deduction for personal, living or family expenses, and included in this category is the expense of maintaining a household. Section 1.262-1(b)(3), Income Tax Regs. There is an exception where the petitioner establishes that the office was used as a place of business, but where the taxpayer uses the office simply for his own convenience, and for an activity unrelated to his business, the deduction will be denied. Sharon v. Commissioner,66 T.C. 515 (1976), *92 affd. per curiam 591 F.2d 1273 (9th Cir. 1978). Petitioner's employer did not require him to maintain an office in his home, and in fact, petitioner admitted that this "office" was used for activities completely unrelated to his career as a chemical engineer. For instance, it was used for "writing letters to the Speaker of the House, Senator Dirksen," and other individuals. Since this office was not used in connection with petitioner's trade or business, respondent properly disallowed it. Petitioner admitted that the "Education 250" was duplicative of the "technical books, education and magazines $150." Obviously, petitioner cannot claim two separate deductions for one expenditure, so this deduction is disallowed in its entirety. Finally, petitioner is not entitled to deduct the cost of his daughter's education. Section 262. Section 6653(a) imposes a 5 percent penalty on an underpayment of tax where such underpayment was due to negligence of an intentional disregard of rules and regulations. The petitioner has the burden of proof on the issue of negligence. Marcello v. Commissioner,43 T.C. 168, 182 (1964) *93 affd. on this issue, 380 F.2d 499, 505-507 (5th Cir. 1967), cert. denied, 389 U.S. 1044 (1968). The entire record clearly supports respondent's imposition of the 5 percent penalty. During 1973 petitioner sold stock 13 separate times, and yet he reported only one sale. The fact that petitioner would have reported a large loss does not excuse him from his duty to report. Further, petitioner's itemized deductions consist of round numbered figures which, for the most part, petitioner was unable to substantiate, or even explain. Also, deductions for such items as his daughter's college education are clearly improper. In light of the foregoing, we find that respondent properly determined the section 6653(a) addition to tax. Taxable Year 1974
Petitioner claimed a bad debt loss on his 1974 return, which respondent disallowed, and failed to produce any evidence to support the deduction. Since petitioner failed to produce any testimony or other evidence on this issue, we hold for respondent. Rule 149(b), Tax Court Rules of Practices and Procedure.
Petitioner claimed a deduction for four casualty losses, but failed to produce credible evidence of *94 the value of the property involved in the casualty. Although it is true that section 165 allows a deduction for casualty losses several factors must be proven before the loss can be claimed. The burden of proof rests with petitioner. Welch v. Helvering,supra.Petitioner identified the goods stolen or damaged in three of the four casualties, but was unable to show their fair market value immediately prior to the casualty or that his basis in the item was. Since petitioner had the burden of proof and failed to establish essential facts the casualty loss deduction is denied. Petitioner claimed a variety of expenses as miscellaneous deductions, all of which respondent disallowed. Petitioner entered into evidence a cancelled check substantiating his $7 safe deposit box rental expense, and since it was used to store the stock certificates it is an allowable deduction. Kelly v. Commissioner,23 T.C. 682 (1955), affd. 228 F.2d 512 (7th Cir. 1956). Respondent properly denied petitioner's audit expense deduction, since it consisted of lost annual leave, not actual out of pocket expense. [10] Since petitioner did not pay or incur *95 any expense in connection with the audit this deduction is not allowed. Section 1.212-1(a)(1), Income Tax Regs.
Petitioner substantiated purchases totaling $81.59 for investment publications which was allowed by respondent as a deduction. Respondent disallowed the balance, and since we can find no evidence showing additional expenditures we sustain respondent's determination. Respondent disallowed all but $300 of petitioner's claimed rental expenses, for failure to substantiate. Petitioner has established that the two Davenport properties were rental property during 1974 and 1975, but we are not convinced that the property at Lake Thunderbird was. Further, although petitioner presented hundreds of receipts to substantiate his rental expense, there is no testimony or other evidence coupling these receipts to the rental property, and establishing that they represented "ordinary and necessary expenses." Section 212. Petitioner has the burden of proof. Welch v. Helvering,supra. *96 Further, petitioner's testimony on this issue consisted solely of an assertion that this item would be substantiated. Petitioner failed to substantiate, and we are unable to conclude that he incurred expenses in excess of the amount respondent allowed. Therefore, the respondent is sustained on this issue. Based on several W-2 forms which are a part of this record, we conclude petitioner improperly omitted $1,125.72 from his gross income. Section 61. Section 6651(a) imposes a delinquency penalty for failing to timely file a return, unless the taxpayer establishes that such failure was due to reasonable cause and not due to willful neglect. Here, petitioner's return was due April 15, 1975, but was postmarked June 16, 1975. Petitioner stated that he thought he filed for and received an extension. He was advised to contact the law firm that prepared his return to corroborate his statement that an extension was filed for and received, but no such evidence was forthcoming. Petitioner has the burden of proving that his failure to timely file was due to reasonable cause and not due to willful neglect. Petitioner's testimony was not at all convincing, and we therefore, sustain *97 respondent on this issue. Taxable Year 1975
Petitioner delayed deducting moving expenses incurred during 1973 until the taxable year 1975. In addition, petitioner testified that the amount claimed was well in excess of the actual moving expense. Although petitioner saw no harm in waiting to deduct his moving expenses, the law and regulations are clear. Section 217(a) allows a deduction for moving expenses "paid or incurred during the taxable year." Petitioner is not entitled to deduct moving expenses paid during 1973 in the taxable year 1975. Meadows v. Commissioner,66 T.C. 51 (1976). In addition, the record is totally void of any evidence establishing the amount of moving expenses incurred during 1973. Therefore, respondent properly disallowed this deduction. Respondent disallowed petitioner's employee business expense deduction. According to petitioner these expenses were incurred in connection with his property at Lake Thunderbird and duties with the U.S. Navy. Petitioner was able to substantiate a $72 expense for uniforms, which we allowed as a deduction, *98 but he failed to produce credible evidence concerning the remaining amount. Since petitioner had the burden of proof and failed to produce any evidence, only $72 of the deduction is allowed. During 1974 the person residing at the Lake Thunderbird cottage intentionally destroyed certain light fixtures, some of the carpet and some windows. Petitioner now claims a casualty loss deduction for this event, and we agree that pursuant to section 165, petitioner sustained a deductible casualty. Further, since there existed a possibility of recovery against the individual as of December 31, 1974, petitioner was correct in claiming the deduction in 1975. Section 1.165-1(d), Income Tax Regs. The amount deducible, however, remains at issue. Section 1.165-7(b)(1)(i), Income Tax Regs., provides that the difference between the fair market value immediately before and immediately after the casualty is the amount deductible. Further, only the amount in excess of $100 is deductible where the property involved is not used for income producing proposes. Section 1.165-7(b)(4), Income Tax Regs. The fair market value *99 of the property immediately before and after the casualty is to be determined by competent appraisal. Section 1.165-7(a)(2)(i), Income Tax Regs. In addition, the cost of repairs to the property damaged is acceptable as evidence of the loss of value. Section 1.165-7(a)(2)(ii), Income Tax Regs.
Petitioner testified that the casualty decreased the fair market value of the property by $2,000. This is contradicted by the report of a local realtor who determined that damage to the property totalled $225. We believe the appraisor's report more accurately reflects the damage done to the property and therefore allow petitioner a $225 casualty loss deduction. Since we have already determined this cottage was not income producing property the amount deductible must be reduced by $100. The appraisor's report represents a concise, objective examination of the property immediately after the casualty. The appraisor detailed the damge done and estimated the amount it would cost to restore the property. Petitioner testified that a contractor would charge $2,000 to restore the property. Petitioner's testimony was generally not credible, *100 and we find that since the appraisal by a local realtor more accurately reflects the amount of the loss, that is the amount deductible. Petitioner claimed a net rental loss for the three properties, which respondent disallowed. Again, petitioner has the burden of proof. Welch v. Helvering,supra.He has failed, however, to give us any basis to approximate the expenses incurred in connection with the two properties located in Davenport. There were a few cancelled checks, totalling $132.67, with notations on them indicating they were for expenses related to the Davenport rental property. Accordingly, petitioner is entitled to claim rental expenses in this amount. The parties have stipulated that petitioner incurred deductible interest expense in the amount of $2,970.50 and deductible taxes expense in the amount of $1,055.03. Accordingly, petitioner is entitled to deduct the amount stipulated.
Respondent disallowed all of petitioner's deduction for charitable contributions; however, based on the evidence we conclude petitioner made deductible charitable contributions in the amount of $45. Petitioner failed to produce any evidence on a casualty or theft *101 loss which respondent has disallowed, and we therefore sustain respondent on this issue. Rule 149(b), Tax Court Rules of Practice and Procedure.
Petitioner again claimed several expenses as miscellaneous deductions, but failed to produce receipts, cancelled checks, or credible testimony to substantiate the deductions. Petitioner has the burden of proof. Welch v. Helvering,supra.
As in 1974, petitioner claimed a deduction for investment publications in the amount of $268. Based on petitioner's testimony we believe he is entitled to a deduction of $40 for periodicals under section 212. Cohan v. Commissioner,supra.Petitioner also established that he paid $7 for the rental of a safe deposit box during 1975, and therefore he is entitled to deduct this amount. Petitioner claimed an office in home deduction, and an IRS audit expense deduction. These two deductions were disallowed in previous years, and they are again disallowed for the same reasons.
Petitioner claimed an education expense deduction, which respondent disallowed. Petitioner failed to prove the expenses were paid for his education, or that the other requirements for *102 deductibility under section 162 were met. Therefore, this deduction is not allowed. Finally, petitioner established that he paid $125 during 1975 for the preparation of his 1974 tax return. He is, therefore, entitled to deduct this amount. Loew v. Commissioner,7 T.C. 363 (1946). Further, pursuant to section 212(3), petitioner is entitled to deduct the cost of filing a petition in the United States Tax Court. Respondent imposed the addition to tax for delinquent filing pursuant to section 6651(a). Petitioner's return was due April 15, 1976 but was not received until March 15, 1977. Petitioner dated his signature on the return as "3 June 76," but all this indicates is that he signed in June, 1976, and held the return for another 9 1/2 months or he falsely backdated his signature shortly before filing the return. In any event he failed to show that the delinquent filing was due to reasonable cause and was not due to willful neglect, and he is therefore liable for the section 6651(a) addition to tax. To reflect the foregoing, Decisions will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that Rule are not applicable to this case.
3. Although petitioner and his wife owned the securities as joint tenants, it appears she did not receive any of the proceeds from the sales. In addition, Mrs. Kincheloe did not report any gain or loss from the sale of securities on her 1973 return.↩
*. Represents a sale, not a purchase. ** A "day book" maintained by petitioner's broker at Rodman indicates that these shares were sold on August 13, September 26 and 27, 1973↩.
4. In addition, petitioner claimed a "bad debt" loss of $750 on his 1974 return, although for some reason benefit of the deduction was not utilized in the actual computation of Schedule D gain and loss.↩
5. At trial, petitioner conceded that these amounts were not deductible.↩
6. Petitioner did submit several hundred receipts from hardware stores but there is no evidence linking the items purchased with the rental property.↩
7. Petitioner conceded at trial that this is not deductible.↩
8. Petitioner sold 100 shares of Nalco on February 12, 1970, but the record does not indicate which shares were sold. Pursuant to section 1.1012-1(c)(1), Income Tax Regs.↩, the first 100 shares of Nalco purchased are allocated to that sale, and those shares are disregarded in determining the adjusted basis of the shares sold during 1973.
9. Petitioner also claimed a bad debt loss on his 1974 return, apparently in connection with the same transaction. Again, due to petitioner's failure to prove the debt became wholly worthless in 1974 the deduction is denied.↩
10. Petitioner did testify that some travel expenses were also involved, but his testimony was too vague to allow us to conclude such expenses were incurred.↩